# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| REX ANYANWU, | : | MOTION TO VACATE |
| Movant, | : | 28 U.S.C. § 2255 |
| | : | |
| v. | : | CRIMINAL NO. |
| | : | 1:12-CR-190-TWT-JSA |
| UNITED STATES OF | : | |
| AMERICA, | : | CIVIL ACTION NO. |
| Respondent. | : | 1:15-CV-3756-TWT-JSA |

## <u>MAGISTRATE JUDGE'S FINAL ORDER AND REPORT AND RECOMMENDATION</u>

Movant Rex Anyanwu has filed the instant motion to vacate pursuant to 28

U.S.C. § 2255. (Doc. 145).[1]  Movant seeks to challenge the constitutionality of his

---

[1] Prior to serving as a U.S. Magistrate Judge, the undersigned served as an Assistant U.S. Attorney ("USAO") in the same office that prosecuted Movant, from approximately 2004 through June 1, 2012.  The undersigned served as deputy chief of the economic crime section of the USAO for some of that period.  The undersigned recalls no personal or supervisory involvement over defendant's case.

Although no request for recusal has been made, the undersigned will briefly explain why he has not recused *sua sponte*.  Title 18 U.S.C. § 455(b)(3) requires a judge who previously served in government to recuse only if the judge actually participated in the case.  *Mangum v. Hargett*, 67 F.3d 80, 83 (5th Cir. 1995).  In other words, "a judge is not subject to mandatory disqualification based on the mere fact that another lawyer in his prior government office served as an attorney on the matter."  *United States v. Champlin*,  388 F. Supp. 2d 1177, 1180 (D. Haw. 2005). Several courts have held that "an Assistant United States Attorney is only disqualified from cases on which he or she actually participated."  *Id.* (citing *United States v. Ruzzano*, 247 F.3d 688, 695 (7th Cir. 2001) ("As applied to judges who were formerly AUSAs, § 455(b)(3) requires some level of actual participation in a case to trigger disqualification."); *Mangum*, 67 F.3d at 83 (same); *Kendrick v.*

sentences, which were imposed on March 5, 2014, following a jury trial in the Northern District of Georgia.

I.      Factual And Procedural History

      A.      Procedural History

On September 18, 2012, Movant was indicted by a federal grand jury in the Northern District of Georgia and charged with one count of conspiracy to commit visa fraud in violation of 18 U.S.C. § 371, one count of conspiracy to harbor aliens in violation of 8 U.S.C. § 1324(a)(1)(A)(v)(I), fifty counts of visa fraud in violation of 18 U.S.C. § 1546(a), forty-nine counts of alien harboring in violation of 8 U.S.C. § 1324(a)(1)(A)(iv), (v)(II), and (B)(i), and three counts of unlawful procurement of citizenship in violation of 18 U.S.C. § 1425(a).  (Doc. 35). Following a jury trial from November 5, 2013 through November 14, 2013, Movant was convicted of the conspiracy to commit visa fraud and conspiracy to

_Carlson_, 995 F.2d 1440, 1444 (8th Cir. 1993) (same).  "[T]he same rule applies to former supervisors in the United States Attorney's office; § 455(b)(3) requires recusal only when the supervisor actually participated in a case."  _Champlin_, 388 F. Supp. 2d at 1181; _United States v. Scholl_, 166 F.3d 964, 977 (9th Cir. 1999); _United States v. Di Pasquale_, 864 F.2d 271, 279 (3d Cir. 1988).  As the undersigned was uninvolved in this case to the best of his recollection and otherwise perceives no ground for recusal, the Court does not _sua sponte_ find that recusal is warranted.

2

harbor aliens, thirty-seven counts of visa fraud, eighteen counts of alien harboring, and three counts of unlawful procurement of citizenship. (Doc. 106).[2] Thereafter, on March 5, 2014, U.S. Chief District Judge Thomas W. Thrash, Jr. granted the Government's motion to revoke Movant's citizenship pursuant to 8 U.S.C. § 1451(e) since Movant was convicted of unlawful procurement of citizenship.[3]

On that same date Judge Thrash sentenced Movant to sixty months of incarceration for the conspiracy to commit visa fraud, and a concurrent seventy months of imprisonment for the remaining convictions of conspiracy to harbor aliens, twenty-seven counts of visa fraud, eighteen counts of alien harboring, and three counts of unlawful procurement of citizenship. (Doc. 117). Through new counsel [Doc. 141], Movant filed an appeal with the Eleventh Circuit, raising the sole argument that the jury was not properly instructed on the offense of harboring

---

[2] At the end of the trial, the Government dismissed thirteen counts of alien harboring and thirteen counts of visa fraud, and the jury found Movant not guilty of eighteen counts of alien harboring. (Docs. 96-102, 106).

[3] 8 U.S.C. § 1451(e) provides that a person convicted under 18 U.S.C. § 1425 "of knowingly procuring naturalization in violation of law, the court in which the conviction is had shall thereupon revoke, set aside, and declare void the final order admitting such person to citizenship, and shall declare the certificate of naturalization of such person to be canceled."

3

aliens.  (Doc. 11 at 6-7).   On January 2, 2015, in a per curiam decision, the Eleventh Circuit affirmed Movant's convictions and sentences.

Movant signed the instant *pro se* § 2255 motion in this Court on October 18, 2015.  (Doc. 145).[4]  In the motion, Movant raises the following grounds for relief:

(1)    Movant received ineffective assistance of trial counsel because counsel:

   (a)    refused to object to deportation;

   (b)    demanded that Movant sign a plea agreement without advising him of the terms thereof;

   (c)    failed to investigate Movant's case;

   (d)    failed to hire a handwriting expert;

   (e)    commented that the "wrong judge" was presiding over his case;

   (f)    did not make objections at trial to preserve issues for appeal; and

   (g)    coerced Movant by mentioning that Movant may not be able to see his daughter for ten years;

---

[4] Under the federal "mailbox rule," both a *pro se* federal habeas petition and a § 2255 motion are deemed to be filed on the date they were delivered to prison authorities for mailing (*i.e.*, signed). *See Taylor v. Williams*, 528 F.3d 847, 849 n.3 (11th Cir. 2008); *Rodriguez v. United States*, 279 F. App'x 753, 753 (11th Cir. 2008).

4

    (2)    Movant received ineffective assistance of appellate counsel when appellate counsel:

        (a)    failed to communicate with Movant; and

        (b)    did not provide Movant with transcripts of the trial.

(Doc. 145).

B.    <u>Factual History</u>

The Eleventh Circuit summarized the evidence presented at trial as follows:

During a two-week jury trial, the government called more than 30 witnesses. Through these witnesses, the government introduced evidence that, for more than ten years, Anyanwu ran a business arranging fraudulent marriages between aliens who wanted to become United States citizens and United States citizens who wanted money. Anyanwu knew that many of the aliens were in the United States illegally. By arranging the marriages, Anyanwu enabled the aliens to receive lawful permanent resident status and remain in the United States indefinitely.

The marriages were shams. On the day of the weddings, Anyanwu would provide transportation to the ceremonies for the citizens, most of whom came from Huntsville, Alabama. The alien and the citizen often would meet for the first time on the day of their wedding, and the weddings were never consummated. At the ceremony, Anyanwu would take pictures of the alien and the citizen, and he occasionally had each person bring several outfits to wear for the photographs. Most of the participants in the marriages interacted with their spouse only to the extent it was needed for the wedding and for convincing Immigration officials that the marriage was real.

Anyanwu charged each alien approximately $7,500 to $10,000 for his assistance in arranging the marriage and enabling the alien to remain

in the country, and he paid the United States citizens each between $500 and $900 for marrying an alien. As part of the scheme, Anyanwu created fraudulent documents that were used by the "couples" to demonstrate to the government that their marriages were bona fide. Among the types of documents that Anyanwu falsified for this purpose were W-2s, joint bank account statements, lease agreements, employment verification letters, and utility bills showing the couple listed together on an account. Additionally, Anyanwu prepared the aliens and the citizens for interviews c o n d u c t e d  by Immigration officials who investigated potential fraud. And Anyanwu suggested answers that would help convince the officials that the marriage was legitimate.

(Doc. 143 at 2-4).

## II.   Motions

After the Court issued a show cause order to the Government [Doc. 148], the Government asked for, and received, an extension of time to respond to the § 2255 motion through January 29, 2016.  (Docs. 147, 150).  On February 25, 2016, Petitioner filed a motion for default judgment, arguing that the Government did not respond to the show cause order within the Court's time frame.  (Doc. 153).

First, it is well settled that default judgment is not contemplated in habeas proceedings.  *Aziz v. Leferve*, 830 F.2d 184, 187 (11th Cir. 1987).  Additionally, the Government timely filed its response on January 29, 2016.  (Doc. 151).  Accordingly, Movant's motion for default judgment [Doc. 153] is hereby **DENIED**.

6

The Government's motion for leave to file excess pages in its response [Doc. 152] is **GRANTED** *nunc pro tunc*.  The Government's responsive pleading filed January 29, 2016, is accepted as filed.

III.   Standard of Review

Congress enacted § 2255, authorizing convicted criminal defendants to file a motion to correct sentences that violate federal law, with the intention that the statute serve as the primary method of collateral attack on federally-imposed sentences. *United States v. Jordan*, 915 F.2d 622, 625 (11th Cir. 1990).  Pursuant to § 2255, individuals sentenced by a federal court can attack the sentence imposed by claiming one of four different grounds: "(1) that the sentence was imposed in violation of the Constitution or laws of the United States; (2) that the court was without jurisdiction to impose such sentence; (3) that the sentence was in excess of the maximum authorized by law; and (4) that the sentence is otherwise subject to collateral attack." *Hill v. United States*, 368 U.S. 424, 426-27 (1962) (internal quotation marks and citations omitted); *see generally United States v. Hayman*, 342 U.S. 205 (1952).

"To obtain collateral relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal." *United States v. Frady*, 456 U.S. 152, 166

7

(1982).   Movant must establish that the facts surrounding his claim present "exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent."  *Bowen v. Johnston*, 306 U.S. 19, 27 (1939).

This Court may deny § 2255 relief without an evidentiary hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."  28 U.S.C. § 2255; *see Long v. United States*, 883 F.2d 966, 968 (11th Cir. 1989).  As discussed below, Movant's § 2255 motion and the record in this case conclusively show that he is not entitled to relief in connection with his claims.  Thus, no evidentiary hearing is required.

## IV.   Analysis

### A.   Ineffective Assistance Of Counsel Standard

The standard for evaluating ineffective assistance of counsel claims was set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).  *Green v. Nelson*, 595 F.3d 1245, 1239 (11th Cir. 2010).   "An ineffective assistance claim has two components:  A petitioner must show that counsel's performance was deficient, and that the deficiency prejudiced the defense."  *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) (citing *Strickland*, 466 U.S. at 687).   To establish deficiency, a petitioner is required to establish that "counsel's representation 'fell below an

8

objective standard of reasonableness.'" *Wiggins*, 539 U.S. at 521 (quoting *Strickland*, 466 U.S. at 688)).  To establish prejudice, a petitioner must prove a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *Allen v. Secretary, Fla. Dep't of Corr.*, 611 F.3d 740, 750 (11th Cir. 2010).  The court may "dispose of [the] ineffectiveness [claim] on either of its two grounds." *Atkins v. Singletary*, 965 F. 2d 952, 959 (11th Cir. 1992); *see Strickland*, 466 U.S. at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one.").

The *Strickland* standard also applies to claims of ineffective assistance of counsel on appeal.  *Smith v. Robbins*, 528 U.S. 259, 285 (2000); *Brooks v. Commissioner, Alabama Dep't of Corr.*, 719 F.3d 1292, 1300 (11th Cir. 2013). To succeed on a claim of ineffective assistance of appellate counsel, as on a claim of ineffective assistance of trial counsel, a petitioner must overcome "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.  A petitioner does not have a right to have every possible argument raised on appeal, and it is up to appellate

9

counsel to "'winnow[] out' weaker arguments[.]"  *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983); *Hittson v. GDCP Warden*, 759 F.3d 1210, 1263 (11th Cir. 2014). Finally, appellate counsel is not ineffective for failing to raise a frivolous argument on appeal.  *United States v. Winfield*, 960 F.2d 970, 974 (11th Cir. 1992).

      B.      Ineffective Assistance Of Trial Counsel Claims

          1.      Failing To Object To Deportation

In Ground 1(a) as enumerated by this Court in Section I.A., Movant claims that trial counsel was ineffective for failing to object to deportation at any time during the proceedings, including pre-trial, trial, and post-trial.  (Doc. 145 at 6). The Government is correct that the issue of whether Movant should be deported would be decided by an immigration judge, and not by this Court during criminal proceedings.  *See* 8 U.S.C. § 1229a(a)(1).

Regardless, any such objection would have been futile.  Indeed, as discussed previously herein in Section I.A., Movant was convicted of unlawful procurement of citizenship under 18 U.S.C. § 1425(a), and when any such conviction occurs, "the court in which such conviction is had *shall* thereupon revoke, set aside, and declare void the final order admitting such person to citizenship, and shall declare the certification of naturalization of such person to be cancelled."  8 U.S.C. §

AO 72A
(Rev.8/82)

1451(a) (emphasis added).    Thus, Judge Thrash had no discretion to deny the Government's motion to revoke Movant's citizenship even though an immigration judge could order Movant to be deported as a consequence thereof.  *See United States v. Manduno*, 40 F.3d 1212, 1218 (11th Cir. 1994) (stating that a court's revocation of naturalization was statutorily mandated and involves no exercise of discretion); *United States v. Inocencio*, 328 F.3d 1207, 1208 (9th Cir. 2003) (stating that revocation of naturalization is mandatory upon a § 1425 conviction, such that courts having jurisdiction over criminal trials would automatically revoke nationalization upon such citizens).

Moreover, most, if not all, of Movant's convictions constitute grounds for removal.  First, Movant was indicted for fifty, and convicted of thirty-seven, counts of visa fraud under 18 U.S.C. § 1546 – of which one conviction would be grounds for removal.  *See* 8 U.S.C. §§ 1227(a)(3)(B)(iii); *Gourche v. Holder*, 663 F.3d 882, 886 (7th Cir. 2011) ("Because Gourche was convicted of conspiracy to violate 18 U.S.C. § 1546, the Board did not err in finding him removable under 8 U.S.C. § 1227(a)(3)(B)(iii)). Also, those thirty-seven visa fraud convictions as well as Movant's eighteen convictions for harboring aliens qualify as crimes of moral turpitude and/or aggravated felonies, or both – which also constitute grounds for

11

removal. *See* 1227(a)(2)(A)(ii)(iii) (providing that an alien is removable if the alien commits two crimes involving moral turpitude and/or an aggravated felony); *Itani v. Ashcroft*, 298 F.3d 1213, 1215 (11th Cir. 2002) ("Generally, a crime involving dishonesty or false statement is considered to be one involving moral turpitude."); *United States ex rel. Volpe v. Smith*, 289 U.S. 422, 423 (1933) ("counterfeiting obligations of the United States – plainly a crime involving moral turpitude"); *Walker v. United States Atty. Gen.*, 783 F.3d 1226, 1277 (11th Cir. 2015) ("We conclude that the offense of uttering a forged instrument necessarily involves an act of deceit" and thus constitutes a crime of moral turpitude); *Patel v. Ashcroft*, 294 F.3d 465, 470 (3d Cir. 2002) (stating that the petitioner is subject to deportation based on his conviction for harboring an alien in violation of 8 U.S.C. § 1324(a)(1)(A)(iii), an aggravated felony), *superseded by statute on other grounds*; *United States v. Chezan*, No. 10 CR 905-1, 2014 WL 8382792, at *12-23 (N.D. Ill. Oct. 14, 2014) (indicating that the defendant's guilty plea to aiding and abetting marriage fraud under 18 U.S.C. § 1546(a) would subject him to deportation proceedings).

In short, all of the charges for which Movant was indicted and eventually convicted would subject Movant to mandatory removal by an immigration court,

and any objection to such removal in this Court would have been futile and without merit.   Thus, trial counsel's failure to object to the likelihood of Movant's deportation during any of Movant's criminal proceedings in this Court was not professionally unreasonable.   *See Harrison v. United States*, 577 F. App'x 911, 915 (11th Cir. 2014) ("In short, the failure of Harrison's appellate counsel to raise these meritless issues on appeal cannot have constituted ineffective assistance."); *Ladd v. Jones*, 864 F.2d 108, 110 (11th Cir. 1989) ("[S]ince these claims were meritless, it was clearly not ineffective for counsel not to pursue them."); *Mylar v. State of Ala.*, 671 F.2d 1299, 1301 (11th Cir. 1982) ("[A]n attorney's failure to brief meritless points of law will normally not be deemed ineffective assistance.").

## 2.   Counsel's Failure To Explain A Plea Offer

Movant claims in Ground 1(b) that trial counsel was ineffective for failing to discuss the terms of the Government's plea agreement with him, and for failing to negotiate against deportation during plea negotiations.   (Doc. 145 at 7-9).   A failure to communicate formal plea offers to a defendant may constitute deficient performance if the offer lapses.   *Missouri v. Frye*, __ U.S. __, 132 S. Ct. 1399, 1409 (2012).   In order to show prejudice in this context, Movant must not only show that there is a reasonable probability that he would have accepted the plea

13

offer, but also that there is a reasonable probability that neither the prosecution nor the trial court would have prevented the offer from being implemented. *Frye*, 132 S. Ct. at 1410.

Here, it does not even appear that there was any formal plea offer, and Movant's argument that counsel did not explain the terms of any informal offer to him is belied by his allegation that he was offered sixteen months if he agreed to deportation. (Doc. 145 at 9). And Movant does not indicate that he would have accepted that informal offer; rather, Movant found the offer unacceptable because he did not want to agree to deportation and wanted trial counsel to negotiate with the Government to remove deportation from any plea discussions.[5]  (*Id.* at 8-9). Movant therefore has failed to demonstrate that there is a reasonable probability that but for trial counsel's failure to explain the terms of the Government's offer

---

[5] Movant also does not argue that he even would have accepted a plea if deportation was removed from the agreement; instead, he simply states that any such option would have "allowed [him] to properly decide" whether to enter a plea or go to trial, would have "lead to a more informed decision," and would have provided him with "greater footing" to decide whether to enter a plea or go to trial. (Doc. 145 at 8-9). More importantly, Movant cannot say that the Government or the Court could have, or would have, accepted a plea that specifically excluded deportation had counsel attempted it, especially because all of the charges against Movant would render Movant subject to mandatory deportation proceedings if convicted.

14

to him, he would have accepted the Government's plea offer instead of going to trial.  Accordingly, Movant is not entitled to relief on Ground 1(b).

    3. <u>Failure To Investigate The Case</u>

    In Ground 1(c), Movant contends that trial counsel did not investigate the case and instead simply relied upon the Government's file "as his source of truth." (Doc. 145 at 10-11).  Even if this Court accepted as true that trial counsel did not investigate the case – which the transcript of the trial belies – Movant has failed to demonstrate that he was prejudiced thereby.  For example, one of the instances to which Movant cites is the fact that although the Government intended to call Movant's ex-wife as a witness, trial counsel made no efforts to interview her. (Doc. 145 at 12-13).  Movant indicates, however, that the Government did not call his ex-wife as a witness, so it is unclear how Movant would have been prejudiced by trial counsel's failure to interview her.

    Movant also claims that he provided trial counsel with the names of various witnesses "that would have provided exculpatory evidence" on his behalf, that counsel never contacted any of those witnesses, and that no witnesses were ever called for the defense.  (*Id.* at 13).   Other than stating that these unspecified witnesses would have provided "favorable testimony" that "Movant never induced

anyone" to make the jury question the truthfulness of the Government's witnesses, Movant provides no further details of these defense witnesses or what their testimony would have been.  (*Id.*).

The burden of establishing prejudice under the Strickland test is "heavy where the [movant] alleges ineffective assistance in failing to call a witness because often allegations of what a witness would have testified to are largely speculative." *Sullivan v. Deloach*, 459 F.3d 1097, 1109 (11th Cir. 2006) (internal quotations omitted). As discussed previously in Section I.B., *supra*, the testimony of approximately thirty witnesses revealed that:  over a period of ten years Movant arranged fraudulent marriages between willing participants comprising non-citizens seeking citizenship and United States citizens; those seeking citizenship through these sham marriages would pay Movant a significant amount of money; Movant would pay the United States citizens a small portion of that money to enter into the sham marriages; and Movant would forge documents and coach both persons as to answers they should give if questioned by immigration officials. The overwhelming evidence showed that Movant masterminded the entire scheme, assisted in arranging the marriages, filed the immigration forms on behalf of the non-citizen, and helped create fake documentation of the marriage.  As the

16

Government did not present any evidence that Movant forced any of the parties into these sham marriages he arranged, it is highly doubtful that vague testimony that Movant never "induced anyone" would have affected the outcome of the trial; nor would any such testimony have negated the overwhelming evidence of his guilt. The Court finds that Movant has not satisfied his heavy burden of showing that he was prejudiced by trial counsel's failure to call any or all of these witnesses. *See id.* at 1109-10 (rejecting ineffective assistance claim for counsel's failure to call a particular witness at trial, because the witness that trial counsel did not call to testify gave deposition "testimony [that] wholly lacked credibility for several reasons," and Eleventh Circuit could "only speculate as to" the possible content of the witness's trial testimony); *see also Conklin v. Schofield*, 366 F.3d 1191, 1204 (11th Cir. 2004) ("Which witnesses, if any, to call, and when to call them, is the epitome of a strategic decision, and it is one that we will seldom, if ever, second guess.") (emphasis added) (internal quotations omitted)).

### 4.   Failure To Hire A Handwriting Expert

In Ground 1(d), Movant argues that trial counsel was ineffective for failing to hire a handwriting expert to examine the signatures on the immigration forms submitted by the aliens applying for citizenship based on the sham marriages that

the Government argued were Movant's signatures.  (Doc. 145 at 14).  According to Movant, those signatures were not his.  (*Id.*).

Counsel's decision not to hire an expert is a strategic decision not generally subject to review.  *See, e.g., Lovett v. State of Fla.*, 627 F.2d 706, 709 (5th Cir. 1980) ("[Counsel's] failure to have the [handwriting] analysis done has not been shown to be the kind of ineffective assistance that requires reversal.");[6] *United States v. Collazos-Munoz*, Nos. CR-00-054-RHW, CR-00-058-RHW, CR-00-105-RHW, 2006 WL 196103, at *7 (E.D. Wash. Jan. 17, 2006) ("Whether to utilize an [sic] handwriting expert is a tactical decision that is left to the discretion of counsel, and the failure to utilize a handwriting expert is sound trial strategy."); *see also United States v. Tarricone*, 21 F.3d 474, 476 (2d Cir. 1993) (finding counsel's decision not to call a handwriting expert was a reasonable, strategic decision).

And Movant offers only conclusory allegations that unknown testimony of a handwriting expert would have changed the outcome of his trial, insofar as he summarily states that the signatures were not his handwriting.  "[U]nsubstantiated and largely conclusory statements" such as Movant's, however, "fall far short of

---

[6] Decisions of the former Fifth Circuit filed prior to October 1, 1981, constitute binding precedent in the Eleventh Circuit. *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. 1981).

18

carrying his burden of persuasion" as to *Strickland*'s two elements. *United States v. Turcotte*, 405 F.3d 515, 537 (7th Cir. 2005).

Indeed, as discussed previously herein, the evidence of Movant's guilt at his trial was overwhelming. Several of the United States citizens who entered into the sham marriages testified that they knowingly entered into those fake marriages but did not sign the immigration documents which provided their name, personal information, and an indication that they were sponsoring an alien spouse to become a citizen; the Government showed the jury side-by-side comparisons of the citizen's real signature and the clearly different signature of that same person on the immigration documents; and several of the aliens who paid Movant to enter into the sham marriages testified that they witnessed Movant sign the name of the citizen they married on those immigration forms. And Movant's claim that any such handwriting expert would have testified as he suggests – *i.e.*, that the signatures on the immigration forms did not match Movant's signature – is pure speculation. Movant, therefore, has also failed to demonstrate prejudice. *See Holt v. Secretary, Dep't of Corr.*, 489 F. App'x 336, 338 (11th Cir. 2012) (rejecting ineffective assistance claim for failing to call an expert witness where it was unclear how the expert would have testified and it was speculative to think that an

19

expert would have testified the way the petitioner wanted); *Wildman v. Johnson*, 261 F.3d 832, 839 (9th Cir. 2001) (rejecting ineffective assistance claim because the petitioner offered no evidence that expert would have provided beneficial information).  Accordingly, Movant is not entitled to relief in connection with Ground 1(d).

> 5. <u>Movant Fails To State Claims As To Grounds 1(e), 1(f) and 1(g).</u>

In Grounds 1(e), 1(f), and 1(g), Movant claims that trial counsel was ineffective because he commented that the "wrong judge" was presiding over Movant's case, he did not make objections at trial to preserve issues for appeal, and he "coerced" Movant by mentioning that Movant may not be able to see his daughter for ten years, respectively.  (Doc. 145 at 14, 15, 17).

With regard to trial counsel's comment that Movant got the "wrong judge," it is not clear which about which judge trial counsel directed his comment.[7]

---

[7] From the time of Movant's indictment through the present time, Movant went before three different magistrate judges during pretrial proceedings before his case was then assigned to U.S. Magistrate Judge E. Clayton Scofield III, and then was reassigned to the undersigned when Movant filed the instant § 2255 motion after Judge Scofield retired.  (*See, e.g.*, Docs. 12, 24, 41; Docket Entry on October 26, 2015).  Movant's case also was assigned to two district judges – first the case was assigned to Senior District Judge J. Owen Forrester [*See* Doc. Entry on June 27, 2012], and later was reassigned to Judge Thrash on December 13, 2012.  (*See*

20

Movant also does not indicate, and this Court cannot glean, how any such comment possibly could have affected trial counsel's performance. To the degree that this Court could construe Movant's claim as an argument that trial counsel should have asked for a particular judge's recusal, other than Movant's conclusory statement that the judge was "prejudicial and bias [sic]," Movant does not provide factual support for any such prejudicial and bias, nor does he demonstrate that any of the other reasons for recusal applied in this case.[8] For that same reason, Movant cannot show how he was prejudiced by any such failure to move for any particular judge's recusal. Ground 1(e) is therefore without merit and Movant is not entitled to relief with regard thereto.

Next, Movant argues in Ground 1(f) that trial counsel failed to object at trial and preserve "obvious issues for appeal." Movant does not specify what these "obvious issues" were or to what trial counsel should have objected to preserve those issues, and/or what appellate claims Movant claims to have lost based on trial counsel's failure to preserve these obvious issues. And, in fact, trial counsel raised many, many objections throughout the two-week trial, and preserved the

Docket Entry on December 13, 2012).

[8] 28 U.S.C. § 455 provides the circumstances under which a judge should recuse himself.

21

issue that Movant did, in fact, raise on appeal. (*See generally*, Docs. 131-35; Doc. 136 at 1061-63). Thus, Plaintiff also is not entitled to relief with regard to Ground 1(f). *See Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) (stating that vague, conclusory, speculative or unsupported claims cannot support an ineffective assistance of counsel claim); *Gonzalez-Augilera v. United States*, Nos. 8:13-cv-800-T-27TBM, 8:12-cr-74-T-27TBM, 2015 WL 7308650, at *2 (M.D. Fla. Nov. 19, 2015) (finding petitioner not entitled to relief on claim of ineffective assistance of counsel for counsel's failure to preserve issues and/or perfect the record for appeal, because the petitioner did not specify any issues that counsel failed to preserve for appellate review or explain how counsel failed to perfect the record); *Banks v. United States*, Nos. 5:08CV162, 5:05CR30, 2010 WL 3854426, at *10 (N.D. West Va. Sept. 29, 2010) (rejecting vague claims of ineffective assistance of counsel alleging that counsel failed to object or preserve for appeal unspecified "intrinsic/implicit issues" where the petitioner failed to provide any specific examples of counsel's failures).

Finally, in Ground 1(g), Movant argues that trial counsel was ineffective for making comments that Movant may not be able to see his daughter for ten years, in order "to induce [Movant's] state of mind" and cause a "threat of coercion."

(Doc. 145 at 17).  Movant's vague claims of "coercion," however, are without merit.  First, it is not clear in what context trial counsel allegedly made these comments, but it certainly would not have been unreasonable professional assistance to discuss with Movant that he faced a maximum of ten years on each count.  *See* 8 U.S.C. § 1324; 18 U.S.C. § 1546.  It also is not clear what exactly counsel allegedly was trying to coerce Movant to do, and/or how any such comment affected the outcome of Movant's case.  Thus, Movant also is not entitled to relief in connection with his vague and general assertions raised in Ground 1(g).

C.    Ineffective Assistance Of Appellate Counsel Claims

In Grounds 2(a) and 2(b), Movant raises two claims of ineffective assistance of appellate counsel – *i.e.,* that appellate counsel failed to consult and communicate with Movant so he could raise issues Movant felt were important, and that he did not send the trial transcripts to Movant so that Movant could assist in the appeal. (Doc. 145 at 19-23).   In order to overcome the presumption in *Strickland* that counsel's conduct was reasonable professional assistance, Movant must "show more than the mere fact that [appellate counsel] failed to raise potentially meritorious claims; he must show that *no competent counsel*, in the exercise of professional reasonable judgment, would have omitted those claims." *Hittson*, 759

23

F.3d at 1263.  Just as with his claim that trial counsel was ineffective for failing to raise objections and reserve "obvious issues" for appeal, however, Movant does not specify what grounds appellate counsel should have raised.  In any event, it would have been up to counsel to determine which issues were the best to raise on appeal, and counsel does not have a duty to raise every nonfrivolous issue requested by Movant.  *See Jones*, 463 U.S. at 751-54 ("Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues.").  Movant, therefore has failed to demonstrate that appellate counsel was ineffective or that Movant was prejudiced thereby.  Both Grounds 2(a) and 2(b) are therefore without merit.

V.    <u>Conclusion</u>

Based on the foregoing reasons, **IT IS HEREBY RECOMMENDED** that Movant Rex Anyanwu's motion to vacate sentence [Doc. 145] be **DENIED**.

VI.   <u>Certificate of Appealability</u>

Pursuant to Rule 11 of the Rules Governing § 2255 Cases, "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. . . . If the court issues a certificate, the court must state the

24

specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."   28 U.S.C. § 2253(c)(2) provides that a certificate of appealability ("COA") may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."   In order for the certification requirement to fulfill its function of weeding out frivolous appeals, a court should not automatically issue a COA; rather, the applicant must prove "something more than the absence of frivolity" or "the existence of mere 'good faith' on his or her part."   *Miller-El v. Cockrell*, 537 U.S. 322, 338 (2003) (citations omitted).

Movant need not prove, however, that some jurists would grant the § 2255 motion.  *See id.*  "The question is the debatability of the underlying constitutional claim, not the resolution of that debate."  *See Lamarca v. Secretary, Dep't of Corr.*, 568 F.3d 929, 934 (11th Cir. 2009) (citing *Miller-El*, 537 U.S. at 325).  In other words, Movant need only demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  Based on the foregoing discussion, reasonable jurists would not find "debatable or wrong" the undersigned's determination that Movant's claims are without merit.  *See Slack*, 529 U.S. at 484.

25

Accordingly, **IT IS FURTHER RECOMMENDED** that a COA be **DENIED**.

The Clerk is **DIRECTED** to terminate the reference to the undersigned Magistrate Judge.

**IT IS SO RECOMMENDED AND ORDERED** this 24th day of May, 2016.

_____
JUSTIN S. ANAND
UNITED STATES MAGISTRATE JUDGE

26